Citation Nr: AXXXXXXXX
Decision Date: 06/29/21 Archive Date: 06/29/21

DOCKET NO. 191017-45110
DATE: June 29, 2021

ORDER

For the appeal period prior to July 1, 2019, a rating in excess of 10 percent for lumbar spine stenosis with degenerative arthritis and intervertebral disc syndrome (IVDS), status post spinal fusion, exclusive of the period where a temporary total rating has been assigned, is denied.

As of July 1, 2019, a rating of 40 percent, but no higher, for lumbar spine stenosis with degenerative arthritis and IVDS, status post spinal fusion, is granted.

A rating in excess of 10 percent for left lower extremity radiculopathy (femoral nerve) is denied.

A rating in excess of 20 percent for left sciatic radiculopathy and compartment syndrome, postoperative, and with Achilles tendon osteophytes, is denied.

A rating in excess of 10 percent for right leg compartment syndrome, postoperative, and with Achilles tendon osteophytes, is denied.

FINDINGS OF FACT

1. For the appeal period prior to July 1, 2019, exclusive of the period where a temporary total rating has been assigned, the Veteran's lumbar spine stenosis with degenerative arthritis and IVDS, status post spinal fusion is manifested by forward flexion greater than 60 degrees and a combined range of motion for the entire thoracolumbar spine greater than 120 degrees, even in contemplation of functional loss due to symptoms such as pain, fatigue, weakness, lack of endurance, or incoordination, or as a result of repetitive motion and/or flare-ups, without muscle spasms or guarding severe enough to result in an abnormal gait or abnormal spinal contour, ankylosis, IVDS with incapacitating episodes requiring bed rest, or associated objective neurological abnormalities other than his service-connected left lower extremity and right lower extremity radiculopathy.

2. As of July 1, 2019, the Veteran's lumbar spine stenosis with degenerative arthritis and IVDS, status post spinal fusion is manifested by pain with forward flexion limited to 30 degrees or less, to include in consideration of functional loss due to symptoms such as pain, fatigue, weakness, lack of endurance, or incoordination, or as a result of repetitive motion and/or flare-ups, without ankylosis, IVDS with incapacitating episodes requiring bed rest, or associated objective neurologic abnormalities other than his service-connected left lower extremity and right lower extremity radiculopathy. 

3. Over the entire period on appeal, the Veteran's symptoms for his left lower extremity femoral radiculopathy have manifested at their worst with mild incomplete paralysis. At no time over the period on appeal has the Veteran's left lower extremity femoral radiculopathy manifested moderate incomplete paralysis.

4. Over the entire period on appeal, the Veteran's symptoms for his left sciatic radiculopathy with compartment syndrome and Achilles tendon osteophytes, have manifested at their worst with moderate incomplete paralysis. At no time over the period on appeal has the Veteran's left lower sciatic radiculopathy with compartment syndrome and Achilles osteophytes manifested moderately severe incomplete paralysis.

5. Over the entire period on appeal, the Veteran's symptoms for his right leg compartment syndrome and Achilles tendon osteophytes, have manifested at their worst with mild incomplete paralysis. At no time over the period on appeal has the Veteran's right leg compartment syndrome and Achilles tendon osteophytes manifested moderate incomplete paralysis.

CONCLUSIONS OF LAW

1. For the appeal period prior to July 1, 2019, a rating in excess of 10 percent for lumbar spine stenosis with degenerative arthritis and IVDS, status post spinal fusion have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.40, 4.45, 4.71a, Diagnostic Code (DC) 5242.

2. For the appeal period as of July 1, 2019, the criteria for a rating of 40 percent, but no greater, for lumbar spine stenosis with degenerative arthritis and IVDS, status post spinal fusion, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.40, 4.45, 4.71a, DC 5242.

3. The criteria for a rating in excess of 10 percent for left lower extremity radiculopathy (femoral nerve) have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.124a, DC 8526. 

4. The criteria for a rating in excess of 20 percent for left sciatic radiculopathy and compartment syndrome, postoperative, and with Achilles tendon osteophytes, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.124a, DC 5311-8520.

5. The criteria for a rating in excess of 10 percent for right leg compartment syndrome, postoperative, and with Achilles tendon osteophytes, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.124a, DC 5271-8520.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from May 2000 to March 2009. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in August 2019 by a Department of Veterans Affairs (VA) Regional Office under the modernized appeals system known as the Appeals Modernization Act (AMA). 

In October 2019, the Veteran timely appealed such rating decision to the Board and requested consideration of the evidence considered by the Agency of Original Jurisdiction (AOJ) as of the date of notification of such decision on August 29, 2019, and any additional evidence submitted in the next 90 days.

Increased Ratings

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. All reasonable doubt will be resolved in the claimant's favor. 38 C.F.R. § 4.3. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

Separate ratings can be assigned for separate periods based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Staged ratings are appropriate whenever the factual findings show distinct periods where the service-connected disability exhibits symptoms that would warrant different ratings. Id.

The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. In Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011), the United States Court of Appeals for Veterans Claims (Court) held that, although pain may cause a functional loss, "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Rather, pain may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance." Id., quoting 38 C.F.R. § 4.40. 

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). 

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint, even in the absence of arthritis. 38 C.F.R. § 4.59; Burton v. Shinseki, 25 Vet. App. 1, 5 (2011). In this regard, 38 C.F.R. § 4.59 requires that "[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." Correia v. McDonald, 28 Vet. App. 158 (2016). Further, 38 C.F.R. § 4.59 is applicable to the evaluation of musculoskeletal disabilities involving actually painful, unstable or malaligned joints or periarticular regions, regardless of whether the DC under which the disability is evaluated is predicated on range of motion measurements. Southall-Norman v. McDonald, 28 Vet. App. 346 (2016).

Moreover, neither the Veteran nor his representative have raised any other issues, nor have any other issues been reasonably raised by the record, with regard to the increased rating claims adjudicated herein. See Doucette v. Shulkin, 28 Vet. App. 366 (2017).

The appeal period before the Board stems from the Veteran's April 9, 2013 claim for increased ratings for his left ankle and back disabilities, plus the one-year look back period. Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010).

1. Entitlement to a rating in excess of 10 percent for lumbar spine stenosis with degenerative arthritis and IVDS status post spinal fusion, exclusive of the period where a temporary total rating has been assigned.

Procedurally, the Veteran was granted service connection for a back disability in a December 2014 rating decision with an evaluation of 10 percent effective July 7, 2014, the date of receipt of the claim. The Veteran's file indicates that he filed an Intent to File on July 21, 2017, and on May 25, 2018 he filed a claim for an increased rating for his back disability. In a December 2018 rating decision, the Veteran was denied a rating in excess of 10 percent for his back disability. The Veteran filed a Supplemental Claim in June 2019, in which he noted the issue of the evaluation of his back disability in the December 2018 rating decision. In July 2019, the Veteran filed a claim for a temporary total evaluation for convalescence following spine lumbar fusion (ALIF). In an August 2019 rating decision, the Veteran was granted a temporary 100 percent evaluation for convalescence following his back surgery effective May 23, 2019, the date of his surgery. He was assigned a 10 percent evaluation for his back disability effective July 1, 2019, the first of the month following his convalescence period. The Veteran filed a VA Form 10182 Board Appeal in October 2019, in which he disagreed with the 10 percent evaluation. The Veteran did not appeal the 100 percent temporary total evaluation for convalescence following his back surgery, including the 100 percent evaluation's effective dates. 

Thus, the Veteran contends that a rating in excess of 10 percent is warranted for his back disability, exclusive of the period where a temporary total rating has been assigned. Based upon a review of the evidence, the Board finds that prior to July 1, 2019, a rating in excess of 10 percent for his back disability is not warranted; however as of such date, a 40 percent rating is warranted.

In this regard, the Veteran's back disability is rated under DC 5242, which provides that lumbosacral strain is evaluated under the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula). While portions of the rating schedule addressing the musculoskeletal system were revised effective February 7, 2021, this DC was not changed. 

Ratings under the General Rating Formula are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. Such provides for a 10 percent rating where forward flexion of the thoracolumbar spine is greater than 60 degrees but no greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height.

A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

A 40 percent rating is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. Finally, a 100 percent rating is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a.

Note (1): Any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code.

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the cervical spine is zero to 45 degrees, extension is zero to 45 degrees, left and right lateral flexion are zero to 45 degrees, and left and right lateral rotation are zero to 80 degrees. Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the cervical spine is 340 degrees and of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion.

Note (3): In exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range of motion is normal for that individual will be accepted

Note (4): Round each range of motion measurement to the nearest five degrees.

Note (5): For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis.

Note (6): Separately evaluate disability of the thoracolumbar and cervical spine segments, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability. 

IVDS may be evaluated under either the General Rating Formula or under the Formula for Rating IVDS Based on Incapacitating Episodes (IVDS Rating Formula), whichever method results in the higher evaluation when all disabilities are combined. 38 C.F.R. § 4.25 (combined ratings table). The IVDS Rating Formula provides that a 10 percent evaluation is warranted when there are incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months. A20 percent evaluation is warranted when there are incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. A 40 percent evaluation is warranted when there are incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. A 60 percent evaluation is warranted when there are incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. Note (1) provides that an incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a.

During the appeal period, the Veteran has been provided with three VA examinations pertaining to his back disability. At two of the examinations the Veteran was found to have IVDS, however, at neither examination was the Veteran found to have had any episodes of acute signs and symptoms due to IVDS that require bed rest prescribed by a physician and treatment by a physician. A further review of the Veteran's VA and private treatment records does not show the Veteran to have ever been prescribed bedrest by a physician. As such, the Veteran's back disability will be rated under the General Rating Formula.

In June 2018, the Veteran underwent a VA examination, at which he reported that he noticed lower back pain and stiffness beginning in 2005. He underwent a laminectomy to decompress the area in January 2017 to alleviate the pain, however the Veteran relayed that the condition has been the same despite the laminectomy. The Veteran did not report having any flare-ups or any functional loss/functional impairment in relation to his back disability. The Veteran's range of motion was from 0 to 90 degrees for forward flexion, 0 to 30 degrees for extension, 0 to 30 degrees for both right and left lateral flexion, and 0 to 30 degrees for both right and left lateral rotation. The Veteran was noted to have exhibited pain with left lateral flexion upon examination, however, it did not cause functional loss. There was no evidence of pain with weight bearing, nor was there objective evidence of pain or localized tenderness on palpation of the joint or associated soft tissue of the Veteran's back. 

The Veteran underwent repetitive use testing, and there was no additional loss of function or range of motion after three repetitions. The examiner indicated that the Veteran was not being examined immediately after repetitive use over time, and explained that the examination was neither medically consistent or inconsistent with the Veteran's statements describing functional loss with repetitive use over time. The examiner found that pain, weakness, fatigability, and incoordination did not significantly limit functional ability with repeated use over a period of time. As the Veteran did not report flare-ups the examiner did not provide findings pertaining to functional ability with flare-ups. 

The Veteran did not have guarding or muscle spasm of the thoracolumbar spine, or any other additional factors contributing to his back disability. Muscle strength testing was normal, and the Veteran did not have muscle atrophy. Deep tendon reflexes, and sensations to light touch were normal. The Veteran was found to have a mild left lower extremity radiculopathy, which the Veteran is service-connected for, and shall be discussed further in the below section pertaining to the lower extremities. As previously noted, the Veteran did not have ankylosis of the spine, and no other neurologic conditions related to a back disability were reported. Additionally, the Veteran was noted to have IVDS, however, also as relayed above, he was not found to have had any episodes of acute signs and symptoms that required bed rest prescribed by a physician. The Veteran did not report the use of any assistive devices in relation to his back disability. The Veteran was noted to have a scar on his lumbar spine; however, it was not painful or unstable, nor did it have a total area equal to or greater than 39 square centimeters. The Board notes that the Veteran is service-connected for his lumbar scar. 

A review of the Veteran's VA and private treatment records does not provide any findings of any greater significance than those relayed in the above VA examination. In general, they reflect complaints of pain and tenderness in the Veteran's lumbar region. 

Following the Veteran's convalescent period after his May 2019 surgery, the Veteran was provided with two VA examinations, both in July 2019. At the first July 2019 VA examination, the Veteran reported that he was unable to perform range of motion testing due to pain and instructions from his doctor following his surgery. The examiner indicated that pain would significantly limit the Veteran's functional ability with repeated use over a period of time, however, the examiner did not provide estimates for range of motion for repetitive use over time because the Veteran had refused range of motion testing. The Veteran underwent another VA examination later that same month, at which it was noted that the Veteran was still healing from his May 2019 surgery, and as such he was unable to undergo range of motion testing. However, the examiner did provide estimates for range of motion with both repeated use over time and for flare-ups. At its worst, with repeated use over time, the examiner estimated the Veteran's forward flexion to 20 degrees. 

Based on the foregoing, the Board finds that for appeal period prior to July 1, 2019, a rating in excess of 10 percent is not warranted for the Veteran's back disability. However, as of July 1, 2019, the Board finds that a 40 percent rating, but no higher, for the Veteran's back disability is warranted. In this regard, prior to July 1, 2019, the evidence of record does not reveal that forward flexion of the thoracolumbar spine was limited to 60 degrees or less or the combined range of motion was limited to 120 degrees or less, even in contemplation of functional loss due to symptoms such as pain, fatigue, weakness, lack of endurance, or incoordination, or as a result of repetitive motion and/or flare-ups. Furthermore, there was no muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis, or ankylosis. However, after such date, the July 2019 VA examiner estimated that the Veteran's back forward flexion was limited to 20 degrees with repeated use over time. 

A review of the record also reflects that the Veteran has never been found to have favorable or unfavorable ankylosis of the entire thoracolumbar spine or unfavorable ankylosis of the entire spine. As previously noted, the Veteran has undergone three VA examinations in relation to his back disability during the appeal period, and ankylosis of the spine was not found at any of these examinations. Additionally, the Veteran's VA and private treatment records do not indicate that the Veteran has ever been diagnosed with ankylosis of the spine. As such, a rating in excess of 40 percent at any time over the appeal period is not warranted.

The Board has also considered whether separate ratings for associated objective neurologic abnormalities other than the Veteran's already separately rated radiculopathy of the left and right lower extremities are warranted pursuant to Note (1) of the General Rating Formula. However, as there is no evidence that his service-connected back disability results in such manifestations, such additional separate ratings are not warranted. 

In reaching the foregoing determination, the Board acknowledges the Veteran's sincerely held belief that his back symptoms are more severe than as reflected by the currently assigned ratings. While the Board recognizes that he is competent to describe his symptomatology and resulting functional difficulties, he is not competent to provide an opinion regarding the severity of his symptomatology in accordance with the rating criteria. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Thus, the Board finds the medical evidence in which professionals with specialized expertise examined the Veteran, acknowledged his reported symptoms, and described the manifestations of such in light of the rating criteria to be more persuasive than his own reports regarding the severity of his disability.

The Board has also considered whether staged ratings under Hart, supra, are appropriate for the Veteran's back disability; however, the Board finds that his symptomatology has been stable throughout each period on appeal. Therefore, assigning additional staged ratings for such disability is not warranted. 

In reaching the foregoing determinations, the Board has applied the benefit of the doubt doctrine and resolved all doubt in the Veteran's favor, which has resulted in a partial award of an increased rating for his back disability. However, insofar as the Board has denied higher or separate ratings, the preponderance of the evidence is against such aspects of the Veteran's claim. Therefore, the benefit of the doubt doctrine is not applicable and such increased rating claim must otherwise be denied. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

2. Entitlement to a rating in excess of 10 percent for left lower extremity (femoral nerve). 

3. Entitlement to a rating in excess of 20 percent for left sciatic radiculopathy and compartment syndrome, postoperative, and with Achilles tendon osteophytes. 

4. Entitlement to a rating in excess of 10 percent for status post chronic right compartment syndrome, postoperative, and with Achilles tendon osteophytes.

Procedurally, the Veteran was granted service connection for left leg compartment syndrome, postoperative, and with Achilles tendon osteophytes in an October 2009 rating decision with a 10 percent evaluation effective March 31, 2009, the day following the Veteran's release from active duty. He was also granted service connection for right leg compartment syndrome, postoperative, and with Achilles tendon osteophytes in the October 2009 rating decision with a 10 percent evaluation effective March 31, 2009. In a December 2014 rating decision, the Veteran was granted a 10 percent evaluation for his left lower extremity sciatic radiculopathy, effective July 7, 2014, the date VA received the Veteran's claim, and a 10 percent evaluation for the Veteran's left lower extremity femoral radiculopathy, effective July 7, 2014, the date VA received the Veteran's claim. 

The Veteran's file indicates that he filed an Intent to File on July 21, 2017, and on May 25, 2018 he filed a claim for increased ratings for both his left and right lower extremities. In a December 2018 rating decision, the Veteran's ratings for his left leg compartment syndrome with Achilles osteophytes and left lower extremity sciatic radiculopathy were combined into one rating because the symptoms of the conditions overlapped. As such, he was granted a 20 percent rating for his left lower extremity sciatic radiculopathy and compartment syndrome, effective July 21, 2017, the date of receipt of his Intent to File. However, it was proposed that his 10 percent evaluation for his left lower extremity radiculopathy pertaining to the femoral nerve be reduced to noncompensable. He was denied a rating in excess of 10 percent for his right compartment syndrome with Achilles osteophytes. 

The Veteran filed a Supplemental Claim in June 2019, in which he noted the December 2018 rating decision, and the evaluation of his left sciatic radiculopathy and compartment syndrome, his left femoral radiculopathy, and his right compartment syndrome with Achilles osteophytes. In an August 2019 rating decision, the Veteran was denied a rating in excess of 20 percent for his left lower extremity sciatic radiculopathy and compartment syndrome. The Veteran's 10 percent evaluation for his left lower extremity femoral radiculopathy was found to still be warranted, however, a rating in excess of 10 percent was denied. The Veteran was denied a rating in excess of 10 percent for his right lower extremity. The Veteran filed a VA Form 10182 Board Appeal in October 2019, in which he disagreed with both the 20 percent evaluation and the 10 percent evaluation for his left lower extremity, as well as the 10 percent evaluation for his right lower extremity.

Thus, the Veteran contends that a rating in excess of 20 percent is warranted for his left lower extremity sciatic radiculopathy with compartment syndrome and Achilles osteophytes, that a rating in excess of 10 percent is warranted for his left lower extremity femoral radiculopathy, and that a rating in excess of 10 percent is warranted for his right compartment syndrome with Achilles osteophytes. However, a thorough review of the Veteran's record does not show that increased ratings are warranted for any of the Veteran's lower extremity disabilities.

In this regard, the Veteran's left lower extremity sciatic radiculopathy with compartment syndrome and Achilles osteophytes is rated under DC 5311-8520. His left lower extremity femoral radiculopathy is rated under DC 8526. The Veteran's right lower extremity compartment syndrome with Achilles osteophytes is rated under DC 5271-8520.

DC 8520 rates the sciatic nerve on the basis of paralysis and provides the following:

An 80 percent evaluation is warranted for complete paralysis where the foot dangles and drops, there is no active movement possible of muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. A 60 percent evaluation is warranted with severe incomplete paralysis with marked muscular atrophy. A 40 percent evaluation is warranted with moderately severe incomplete paralysis. A 20 percent evaluation is warranted with moderate incomplete paralysis. A 10 percent evaluation is warranted with mild incomplete paralysis.

DC 8526 rates the femoral nerve on the basis of paralysis and provides the following:

A 40 percent evaluation is warranted for complete paralysis of quadriceps extensor muscles. A 30 percent evaluation is warranted with severe incomplete paralysis. A 20 percent evaluation is warranted with moderate incomplete paralysis. A 10 percent evaluation is warranted with mild incomplete paralysis. 

The term "incomplete paralysis," with this and other peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a, DCs 8520, 8526.

Neuralgia, cranial or peripheral, characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scale, with a maximum equal to moderate incomplete paralysis. 38 C.F.R. § 4.124. The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a.

Over the period on appeal, the Veteran has undergone seven VA examinations pertaining to his lower extremities, which includes three peripheral nerve examinations, two muscle injury examinations, one ankle examination, and one foot examination.

He first underwent a VA examination for peripheral nerves in June 2018, at which he reported that he noticed lower back pain and stiffness that radiated down his left leg beginning in 2005. He underwent a laminectomy to decompress the area and alleviate pain in January 2017. The condition improved after the surgery. Symptoms attributable to the Veteran's left lower extremity included moderate constant pain, moderate paresthesias and/or dysesthesias, and moderate numbness. No symptoms were attributed to the Veteran's right lower extremity. The Veteran's muscle strength, reflexes, sensations to light touch, and gait were all normal. The Veteran did not have muscle atrophy, or any trophic changes. 

Special tests were performed for median nerve evaluation, and both Phalen's sign and Tinel's sign were negative. The Veteran was noted to have a scar, which was not painful or unstable, and did not have a total area greater than 39 square centimeters. As previously noted, the Veteran is service-connected for a scar on his lumbar spine, and he is also service-connected for scars on his bilateral lower extremities. The Veteran did not report the use of any assistive devices. Diagnostic test findings were not noted. The examiner found the Veteran to have moderate incomplete paralysis of the sciatic nerve for the left lower extremity. The Veteran's sciatic nerve for the right lower extremity was indicated to be normal. 

The Veteran next underwent a VA examination for muscle injuries in August 2018, at which the Veteran reported that his bilateral compartment syndrome with Achilles tendon osteophytes had gotten worse due to an increase in pain even during resting periods. He relayed that the pain is now present at all times, and that it increases with activity and touch. He also noted weakness, poor balance, and that his legs and feet go numb very often when elevated. 

The examiner indicated that the Veteran did not now, and never had, an injury to a muscle group of the foot and leg. There were no signs or symptoms of a muscle injury. The Veteran's muscle strength was all normal except for the ankle plantar flexion and ankle dorsiflexion, which was bilaterally 4/5 for less than normal strength. The Veteran did not have muscle atrophy. The Veteran did not report the use of any assistive devices. Imaging studies were not noted to be available. The examiner indicated that the Veteran's bilateral compartment syndrome with Achilles tendon osteophytes was asymptomatic.

The Veteran underwent a VA examination for ankle conditions in December 2018, at which the Veteran reported that his bilateral Achilles osteophytes were the same as far as he knew. He noted that his request for an increase pertained to his compartment syndrome. The Veteran did not report flare-ups to his ankles. He did note functional impairment, and described it as having very poor balance. The Veteran's range of motion was normal bilaterally. There was no additional loss of function or range of motion after undergoing repetitive use testing. The examiner found that pain, weakness, fatigability, and incoordination did not significantly limit functional ability with repeated use over a period of time. 

The Veteran's strength for both plantar flexion and dorsiflexion were normal. The Veteran did not have muscle atrophy, ankylosis, instability, or dislocation. The Veteran was noted to have bilateral shin splints that affect the range of motion of both the knee and ankle, which were described as pain with prolonged walking and standing. It was also indicated that he had bilateral Achilles tendonitis or achilles tendon rupture, which was described as pain on the Achilles with prolonged standing and walking. The Veteran was noted to have undergone a bilateral fasciotomy in 2006/2007. The Veteran was noted to have scars, which were not painful or unstable, and did not have a total area greater than 39 square centimeters. As previously noted, the Veteran is service-connected for scars on his bilateral lower extremities. Imaging studies were not noted to be available. The Veteran did not report the utilization of any assistive devices.

The Veteran underwent another VA examination for muscle injuries in December 2018, at which it was noted that the Achilles were the same. The examiner indicated that the Veteran did have, or has had, an injury to a muscle group of the foot and leg. Muscle Group XI for the foot, ankle, and calf, and muscle group XII for the anterior muscles of the leg were noted to be affected bilaterally. Symptoms attributable to a muscle injury were lowered threshold of fatigue, and fatigue-pain. Both symptoms were attributed bilaterally to both muscle groups XI and XII. The Veteran's muscle strength was all normal, and he did not have muscle atrophy. The Veteran did not report the use of any assistive devices. Diagnostic testing was not noted. 

The Veteran underwent an additional VA examination for peripheral nerves in December 2018, at which the Veteran reported that his bilateral compartment syndrome had worsened due to constant pain and his legs going numb without exercise needed. Symptoms attributable to the Veteran's bilateral lower extremities included moderate constant pain, severe intermittent pain, severe paresthesias and/or dysesthesias, and severe numbness. The Veteran's muscle strength, reflexes, sensations to light touch, and gait were all normal. 

The Veteran did not have muscle atrophy, or any trophic changes. The Veteran was noted to have scars, which were not painful or unstable, and did not have a total area greater than 39 square centimeters. As previously noted, the Veteran is service-connected for the annotated scars. The Veteran did not report the use of any assistive devices. Diagnostic test findings were not noted. Unfortunately, the examiner did not note the nerve roots that were affected with either of the Veteran's lower extremities, or provide any findings pertaining to the evaluation of severity for either of the Veteran's lower extremities.

The Veteran underwent a VA examination pertaining to foot conditions in July 2019, at which he reported that the pain in his lower legs that was associated with compartment syndrome and Achilles osteophytes had remained the same since onset. He noted that he currently has aching after periods of prolonged standing or increased activity. He relayed having pain and described it like a cramping, throbbing, aching pain that goes all the way down to his feet. He did not report flare-ups or any functional loss/impairment of his feet. The examiner indicated a mild level of severity for the Veteran's bilateral Achilles osteophytes. 

The Veteran's foot condition did not chronically compromise weight bearing, and it did not require arch supports or any custom orthotics or shoe modifications. The examiner did not find the Veteran to exhibit pain upon physical examination of his feet. It was noted that the Veteran's reports of pain were subjective only. The examiner did not find the Veteran to have any functional loss for either lower extremity attributable to his bilateral Achilles osteophytes. The examiner indicated that pain bilaterally limited functional ability during flare-ups or when the foot is used repeatedly over a period of time. The functional loss was described as aching pain after standing or walking for long periods of time. The Veteran did not report the use of any assistive devices. Imaging studies were not noted to be available. 

The Veteran underwent another VA examination pertaining to peripheral nerves in July 2019, at which the Veteran reported that his left lower extremity symptoms had not improved, and had even worsened since his spinal fusion in 2019. Symptoms attributable to the Veteran's left lower extremity included mild constant pain, moderate paresthesias and/or dysesthesias, and mild numbness. Symptoms attributable to the Veteran's right lower extremity included mild paresthesias and/or dysesthesias and mild numbness. The Veteran's muscle strength was normal except for knee extension, ankle planter flexion, and ankle dorsiflexion, which were 4/5 bilaterally for active movement against some resistance. The Veteran did not have muscle atrophy, or trophic changes. 

The Veteran's reflexes were all normal except for his left knee and left ankle were 1+ hypoactive. His sensations to light touch were decreased in the upper anterior thigh bilaterally, the right thigh/knee, the right lower leg/ankle, and the right foot/toes. The Veteran's gait was not considered to be normal; it was described as antalgic, slow gate. The etiology of the abnormal gait was explained as pain secondary to lumbar spine condition and lower leg compartment syndrome condition. The examiner found the Veteran to have moderate incomplete paralysis of the sciatic nerve, and mild incomplete paralysis of the femoral nerve for the left lower extremity. The examiner also indicated mild incomplete paralysis of the sciatic nerve for the right lower extremity.

A review of the Veteran's VA and private treatment records does not provide any findings of any greater significance than those relayed in the above VA examinations. In general, the Veteran's treatment records reflect complaints of radiating pain and numbness into the Veteran's left lower extremity, and complaints of numbness into the Veteran's right lower extremity. However, there are no indications in the Veteran's treatment records pertaining to the level of severity of his symptoms. That is, the complaints are not shown to be more than sensory, as there are no indications in his treatment records of decreased sensations, reflexes, strength, or trophic changes.

Based upon the foregoing, a rating in excess of 20 percent for the Veteran's left sciatic radiculopathy with compartment syndrome and Achilles osteophytes is not warranted. The Veteran's symptoms for his left sciatic radiculopathy, his compartment syndrome, and his Achilles osteophytes overlap, and as such he has been provided with one 20 percent rating in relation to his sciatic nerve and his left lower extremity. At its worst, in both the June 2018 and July 2019 VA peripheral nerves examinations, the Veteran's left lower extremity in relation to the sciatic nerve, was found to manifest moderate incomplete paralysis. 

Additionally, the other examinations did not show that the Veteran's functional ability was limited in a manner that was more than sensory. Limitations to functional ability in the other examinations pertained to pain predominantly with standing and walking. They did not show any decreased sensations, reflexes, strength, or trophic changes that would warrant a rating higher than 20 percent for moderate. Additionally, the Veteran's range of motion such as with his ankle has not been affected, nor has his stability. It was even noted in the August 2018 muscle injuries examination, that the Veterans bilateral compartment syndrome with Achilles tendon osteophytes was asymptomatic. As such, a rating in excess of 20 percent for the Veteran's left sciatic radiculopathy with compartment syndrome and Achilles osteophytes is not warranted.

A rating in excess of 10 percent for the Veteran's left lower extremity femoral radiculopathy is not warranted. At its worst, during the July 2019 VA examination, the Veteran's left femoral radiculopathy was found to manifest mild incomplete paralysis. As such, a rating in excess of 10 percent for the Veteran's left lower extremity femoral radiculopathy is not warranted.

A rating in excess of 10 percent for the Veteran's right lower extremity compartment syndrome with Achilles osteophytes is not warranted. At its worst in the July 2019 VA examination, the Veteran's right compartment syndrome with Achilles osteophytes was found to manifest with mild incomplete paralysis. As was also seen with the Veteran's left lower extremity, the other examinations did not show that the Veteran's functional ability with his right lower extremity was limited in a manner that was more than sensory. Again, the limitations in the other examinations pertained predominantly to pain with standing and walking. They did not show any decreased sensations, reflexes, strength, or trophic changes that would warrant a rating higher than 10 percent for mild for the Veteran's right lower extremity. 

While the July 2019 VA peripheral nerves examination did note some decreased sensations, and that the Veteran had an antalgic gate, the examiner in this examination still rendered a finding of mild incomplete paralysis. Additionally, the Veteran's range of motion such as with his ankle has not been affected, nor has his stability. It was even noted in the August 2018 muscle injuries examination, that the Veteran's bilateral compartment syndrome with Achilles tendon osteophytes was asymptomatic. As such, a rating in excess of 10 percent for the Veteran's right lower extremity compartment syndrome with Achilles osteophytes is not warranted.

Accordingly, a rating in excess of 20 percent for left sciatic radiculopathy and compartment syndrome, postoperative, and with Achilles tendon osteophytes, is denied. A rating in excess of 10 percent for left lower extremity radiculopathy (femoral nerve) is denied. A rating in excess of 10 percent for right sciatic radiculopathy and compartment syndrome, postoperative, and with Achilles tendon osteophytes, is denied.

 

 

K. Clark

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board S. Lutgens-Staley, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.